In re EPI–SCAN, INC., Debtor.

John W. SYWILOK, Trustee in
Bankruptcy of the Estate of
Epi-Scan, Inc., Plaintiff,

v.

ESTEE LAUDER, INC., Defendant.

In re Evelyna C. DYSON, Debtor.

Evelyna C. DYSON, Plaintiff,

v.

ESTEE LAUDER, INC., Defendant.

Bankruptcy Nos. 86–00528, 85–06809.
Adv. Nos. 86–0520, 86–0559.

United States Bankruptcy Court,
D. New Jersey.

April 6, 1987.

Godlesky & Sywilok by John W. Sywilok, Hackensack, N.J., for plaintiff/trustee, John W. Sywilok.

Norgaard & Scher by Gary K. Norgaard, Englewood, N.J., for plaintiff/debtor, Evelyna C. Dyson.

Pitney, Hardin, Kipp & Szuch by Timothy R. Greiner, Morristown, N.J., for defendant, Estee Lauder, Inc.

WILLIAM F. TUOHEY, Bankruptcy Judge.

■ The matter presently before the Court is a motion brought by counsel on behalf of the Defendant, Estee Lauder, Inc. for an order consolidating for joint hearing and trial, any and all matters in issue in the two captioned adversary proceedings and

for the further relief set forth below. The first matter is an adversary proceeding entitled *John W. Sywilok, Trustee v. Estee Lauder, Inc.*, Adv. No. 86–0520DV (filed in the case of In re Epi-Scan, Inc., Case No. 86–00528); the second adversary proceeding is *Evelyna C. Dyson v. Estee Lauder, Inc.*, Adv. No. 86–0559C (filed in the case of In re Evelyna Dyson, Case No. 85–06809). Defendant Estee Lauder moves pursuant to Bankruptcy Rule 7042 and Fed.R.Civ.Proc. 42(a) for an order dismissing the complaints filed by the Debtor-in-Possession, Evelyna C. Dyson and Trustee Sywilok for lack of subject matter jurisdiction or in the alternative, for relief in the form of an order of abstention pursuant to 28 U.S.C. § 1334(c).[1]

At the hearing February 11, 1987, counsel for the Trustee in the Epi-Scan matter, stipulated that all attorneys in both the Dyson and Epi-Scan cases agreed that they were submitting the matter to this Court for decision based upon the briefs filed in the Dyson case and that counsel in both Dyson and Epi-Scan would be bound by this decision. Based upon the record before it, the following constitutes the Court's findings of fact.

The Defendant in this matter, Estee Lauder, Inc. ("Estee Lauder") retained Evelyna C. Dyson ("Dyson") and/or Epi-Scan, Inc. ("Epi-Scan") as independent contractor(s) to perform consulting services for Estee Lauder. With regard to Dyson, these services related to ultrasound investigation of the mechanical properties of human skin which information was being used by Estee Lauder for possible product development in the skin care field. The work was performed pursuant to a Secrecy Agreement wherein Estee Lauder would make available to Dyson certain confidential information regarding its research programs and projects. With regard to Epi-Scan, these services related to clinical studies to determine the effect of various product formulations on skin firmness, elasticity and smoothness.

Copies of invoice bills attached to the complaints indicate the following activity as being billed by Dyson to Estee Lauder:[2]

| Invoice Bill No: | Invoice Date: | Activity: | Amount: |
| --- | --- | --- | --- |
| 101 | 12/27/85 | Consulting Fees, 10/13/85 – 10/19/85 | $ 7,000.00 |
| 102 | 12/27/85 | European Trip 11/7/85 – 11/17/85 | 16,357.00 |
| 103 | 12/27/85 | Travel fees for consulting. | 1,100.00 |
| 108 | – – | Reimbursement for vacuum pump and devices | 1,600.00 |

Activity billed by Epi-Scan to Estee Lauder is indicated as follows:[3]

---

**1.** Defendant's motion also seeks relief in the form of withdrawal of reference pursuant to 28 U.S.C. § 157(d). This Court does not address that issue however, as such relief should properly be sought in the District Court. See *Interconnect Telephone Services, Inc. v. Farren*, 59 B.R. 397, 402 (S.D.N.Y.1986).

**2.** It should be noted that these invoices are marked "Re: Epi-Scan".

**3.** It should be further noted that these invoices are identically marked "Re: Epi Scan".

| Invoice Bill No: | Invoice Date: | Activity: | Amount: |
|---|---|---|---|
| 104 | 12/27/85 | Clinical Study CS–85–34 | $30,000.00 |
| 105 | – – | Clinical Study CS–85–34A | 20,000.00 |
| 106 | 12/28/85 | Clinical Study CS–85–38 | 30,000.00 |
| 107 | – – | Clinical Study CS–85–38 | 10,000.00 |

Litigation was initiated in both the Chancery Division and the Law Division of the Superior Court of New Jersey, Bergen County, when it was discovered that Dyson and/or Epi-Scan was using certain equipment owned by C–Scan, Inc. ("C–Scan") and financed by Midlantic National Bank ("Midlantic") to perform services for Estee Lauder. Counsel's moving papers aver that C–Scan is a corporation formed by Dyson and others for the purpose of purchasing equipment and performing skin cancer testing and treatment.

Estee Lauder asserts it was unaware that any of the equipment was owned by any person or entity other than Dyson and/or Epi-Scan or that any person or entity had a security interest in the equipment when Dyson proposed to move the equipment to Estee Lauder's premises. The equipment has since been repossessed and sold by Midlantic. Counsel for the Defendant (Estee Lauder) indicates that the issue presently before the Bankruptcy Court was joined in the state court proceedings insofar as:

(a) The amended complaint filed in the Chancery Division case seeks the imposition of a constructive trust upon all monies which may be due Dyson and/or Epi-Scan.

(b) The amended order dated January 16, 1986 requires Estee Lauder to deposit any funds owed to Dyson into court.

(c) Dyson's deposition testimony refers to consulting services she and/or Epi-Scan had performed for Estee Lauder and was in the process of performing when the state court actions were commenced.

Both Dyson and Epi-Scan filed bankruptcy petitions subsequent to the time the state court actions were commenced. Dyson filed a Chapter 11 bankruptcy petition on December 20, 1985. Epi-Scan filed a Chapter 7 petition on January 28, 1986. As the invoices in both cases were dated December 27, 1985 and December 28, 1985, the *Dyson* matter involves postpetition account receivables while the *Epi-Scan* matter involves prepetition receivables. The state court claims against Dyson and Epi-Scan were stayed.

On September 30, 1986, the Trustee of the estate of Epi-Scan, Inc. filed an adversary proceeding against Estee Lauder seeking $91,500 allegedly due and owing to Epi-Scan for personal consulting services. On November 6, 1986, the Debtor-in-Possession in Dyson's Chapter 11 bankruptcy case also filed an adversary proceeding against Estee Lauder for $26,057 allegedly due and owing to Dyson.

Since common questions of law and fact are presented in the above actions pending before this Court, procedural consolidation pursuant to Bankruptcy Rule 7042 and Fed.R.Civ.Pro. 42(a) is appropriate.

The facts having been established, there are two issues which this Court must address. The first is whether this Court has subject matter jurisdiction over these proceedings pursuant to 28 U.S.C. § 157(b)(2) so as to enter final judgments and dispositive orders thereon. The second is whether this Court should abstain from hearing these proceedings pursuant to 28 U.S.C. § 1334(c). Based upon a review of the record in this matter and relevant law, this Court concludes and determines:

(1) The *Dyson* (postpetition) action is a core proceeding "arising in" a case under Title 11 pursuant to 28 U.S.C. § 157(b)(2)(A) and as such is one in which this Court may hear and enter final orders pursuant to 28 U.S.C. § 157(b)(1).

(2) The *Epi-Scan* (prepetition) action is a non-core proceeding "related to" a case under Title 11 and as such is one in which this Court may only submit proposed findings of fact and conclusions of law to the district court pursuant to 28 U.S.C. § 157(c)(1).

(3) The within proceedings are not subject to the mandatory abstention provision of 28 U.S.C. § 1334(c)(2).

(4) The within proceedings are however subject to the discretionary abstention provision of 28 U.S.C. § 1334(c)(1). Given the core/non-core nature of the proceedings consolidated herein, this Court exercises its discretionary right to abstain from hearing the within proceedings for the following reasons.

*Prepetition Accounts Receivable Matters Are Non-Core Proceedings*

Pursuant to 28 U.S.C. § 157(b)(3), this court must exercise its discretion and determine whether the adversary complaints by the Trustee in the *Epi-Scan* matter and/or by the Debtor-in-Possession in the *Dyson* case constitute core proceedings or are proceedings that are otherwise related to a case under title 11.

The resolution of this issue requires a review of the relevant case law, since a conflict exists under the 1984 legislation with respect to whether accounts receivable actions are related or core matters. Those courts holding that actions to collect accounts receivable are core matters have argued that the prompt collection of assets is essential to the efficient administration of the estate under 28 U.S.C. § 157(b)(2)(A); or that the collection of accounts receivable are proceedings "to turnover property of the estate" under 157(b)(2)(E). A third group of courts finding core jurisdiction have upheld the argument under 157(b)(2)(O) because such a proceeding was held to affect the liquidation of assets of the estate or the adjustment of the debtor-creditor relationship. *In re The Aristera Company v. Chaney,* 65 B.R. 928 (Bkrtcy. N.D.Tex.1986).

There is a generally recognized split of authority [4] as to whether the 1984 Amendments to the Bankruptcy Code have resolved the unconstitutional grant of broad jurisdiction to the bankruptcy courts which was struck down by the Supreme Court in *Northern Pipeline Construction Company v. Marathon Pipeline,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Those courts which have found bankruptcy courts as a result of the 1984 Amendments to have jurisdiction to adjudicate state law contract actions by the estate against non-creditor defendants, include, *In re Nat. Equipment & Mold Corp.,* 64 B.R. 239 (Bkrtcy.N.D.Ohio 1986); *In re Franklin Computer Corp.,* 60 B.R. 795 (Bkrtcy.E.D. Pa.1986); *In re Bucyrus Grain Co., Inc.,* 56 B.R. 204, (Bkrtcy.D.Kan.1986); *Matter of Baldwin-United Corp.,* 48 B.R. 49 (Bkrtcy.S.D.Ohio 1985); *In re Lion Capital Group,* 46 B.R. 850 (Bkrtcy.S.D.N.Y. 1985). Those courts which feel that a broad reading of the 1984 Amendments would violate the principles laid down by the *Marathon* mandate, are *In re Acolyte Electric Corporation v. The City of New York,* et al. 69 B.R. 155 (Bkrtcy.E.D.N.Y. 1986); *In re Allegheny, Inc. v. Laniado Wholesale Company,* 68 B.R. 183 (Bkrtcy. W.D.Pa.1986); *In re Windsor Communications Group, Inc.,* 67 B.R. 692 (Bkrtcy.E. D.Pa.1986); *In re Aristera Co.,* 65 B.R. 928 (Bkrtcy.N.D.Tex.1986); *Arnold Printworks, Inc. v. Apkin,* 61 B.R. 520 (D.Mass. 1986); *In re R.I. Lithograph Corp.,* 60 B.R. 199 (Bkrtcy.D.R.I.1986); *Matter of Century Brass Products Inc.,* 58 B.R. 838 (Bkrtcy.D.Conn.1986); *In re Satelco, Inc.,* 58 B.R. 781 (Bkrtcy.N.D.Tex.1986).

Generally those cases adopting an expansive definition of a core proceeding, would support core status over both pre and post-

---

**4.** See *In re Arnold Printworks,* 61 B.R. at 523; *In re Satelco, Inc.,* 58 B.R. at 783; and *In re Bucy-* *rus Grain Co., Inc.,* 56 B.R. at 206; recognizing the split.

petition account receivable suits. Alternatively, in the line of cases adopting a very narrow construction of what may fit within the realm of a core proceeding, such courts have denied jurisdiction over either pre or postpetition accounts. Since the statute is silent as to a clear definition of what constitutes a related or non-core proceeding, defining the term is crucial before any determination can be made by this Court as to the matter before it, since the core/non-core dichotomy lies at the heart of the *Marathon* jurisdictional mandate. See generally *In re Arnold Printworks*, 61 B.R. at 523.

 As applied to the facts of the present case, the Court finds that an action to recover on a postpetition account (as in the Dyson matter) is core for the reasons that such a cause of action clearly "arises in" the title 11 case and was not owned by the debtor at the time the title 11 case was commenced. 1 *Collier* § 3.01(2)(b)(iii) (15th ed. 1986). Further, in exercising its discretion in this regard, the Court determines that the matter constitutes a core proceeding for the reasons set forth above, upon a concurrent finding that jurisdiction is predicated solely upon subsection (A) of 28 U.S.C. § 157(b)(2) to the exclusion of subsections (E) and (O),[5] in that the matter arising postpetition is one directly affecting "the administration of the estate." The Court finds the opposite result arises with

---

5. It is significant to note that Collier as well as a well reasoned body of case law have rejected core proceeding jurisdiction over accounts receivable predicated upon subsections (E) and (O).

*As respects the subsection (E) argument*, see 1 *Collier, supra* § 3.01(2)(b)(3) (by reading "orders to turn over property of the estate" to include accounts receivable, every action brought by a debtor in possession to recover money or property could conceivably be characterized as a "turnover proceeding" thereby effectively underpinning *Marathon*.); *In re Satelco*, 58 B.R. at 789 ("actions to collect accounts receivable based upon state law contract principles do not fall within the scope of turnover actions as contemplated by § 542 and § 157(b)(2)(E), absent a final judgment from a court of competent jurisdiction, a stipulation, or some other binding determination of liability."); *In Century Brass Products, Inc. v. Millard Metals Service Center, Inc.*, 58 B.R. 838 (Bkrtcy.D.Conn. 1986) ("Reference to an order to turnover property of the estate under 157(b)(2)(E) does not include an action to collect upon an account receivable"); *In re Acolyte*, 69 B.R. at 171. ("To the extent that any lawsuit (*Marathon* included) seeks recovery of funds predicated only upon a successful determination of liability it could be argued that it constitutes a turnover. The statute, however, must contemplate something more, else the constitutional defect in the preamendment state of the law recognized by *Marathon* would in no way have been improved by that legislation.")

*Similarly, as respects the subsection (O) argument*, see 1 *Collier, supra* § 3.01(2)(b)(iii): ("It has previously been argued that the only types of proceedings which are excluded from core treatment are those which arise out of causes of action owned by the debtor at the time the title 11 case is filed and those between third parties related to the bankruptcy estate. The causes of action considered by the cases discussed in the preceding paragraph fall within the first category, and by holding such matters to be core proceedings because of the broad language of subparagraph (O) of section 157(b)(2), the courts have obliterated the distinction so crucial to the *Marathon* case of related proceedings on the one hand and arising under or arising in proceedings on the other. More reasoned opinions have held that a breach of contract action cannot be characterized as falling under section 157(b)(2)(O), since that would wipe out the underpinings of *Marathon*.")

*In re Satelco*, 58 B.R. at 789 (to read subsection (O) matters concerning the liquidation of assets or the adjustment of the debtor creditor relationship to include accounts receivable is unconstitutional in light of *Marathon*); *In re Acolyte*, 69 B.R. at 172 (should the "catch all" language of subsection (O) be read to support jurisdiction based upon the argument that one of the steps necessary to liquidate an estate is the collection of amounts due, or that the collection of such accounts affect the debtor creditor relationship, *Marathon* itself would constitute a core proceeding within this construct and the 1984 amendments would be as unconstitutional as the 1978 Reform Act it sought to remedy.)

Significantly, it should be noted that the courts have also struck down core proceeding jurisdiction over accounts receivable under subsection (A) for the same reason as subsection (O) rejecting the idea that a sufficient "nexus" exists to justify treatment of the matters as one which "affects the administration of the estate" since under such a broad reading *Marathon* itself would constitute a core proceeding and the 1984 Amendments would be unconstitutional. See *Acolyte*, 69 B.R. at 172. Such an analysis however does not contradict the finding herein that *postpetition* accounts clearly "arise in" the title 11 case and therefore more directly concern the administration of the estate. *Marathon* involved a suit on a prepetition contract and therefore was "related to" the title 11 case. See generally 1 *Collier, supra* § 3.01.

respect to prepetition accounts (as in the *Epi-Scan* matter) for the reason that such a cause of action is "related to" the Title 11 case in that the cause of action was owned by the Debtor at the time the Title 11 case was commenced, and therefore became property of the estate under § 541 of the Bankruptcy Code. Such an interpretation is not only in accordance with the "better result" [6] as recognized by Professor Collier but appears to satisfy the constitutional mandate set forth by the *Marathon* court. Id. See also *In re Arnold Printworks,* 61 B.R. at 523.

### *Are These Matters in Which The Court Should Abstain Pursuant to 28 U.S.C. § 1334(c)?*

The Defendant, Estee Lauder, moves for an order of abstention pursuant to § 1334(c), which includes both the permissive abstention provision of subsection (c)(1) and the mandatory abstention provision of subsection (c)(2). If this Court finds that the elements of § 1334(c)(2) [7] are met, it must then abstain from hearing these proceedings. Should that not be the case, it becomes necessary to determine whether § 1334(c)(1), the permissive abstention provision, applies.

■ Upon review, this Court finds that all of the elements of mandatory abstention are not present. Specifically, the bankruptcy court in *Allied Mechanical & Plumbing Corp. v. Dynamic Hotels Housing Dev. Fund Co., Inc. (In re Allied Mechanical & Plumbing Corp.,* 62 B.R. 873 (Bkrtcy.S.D.N.Y.1986) lists the criteria that must be shown before an order under § 1334(c)(2) can issue:

1. A party in a proceeding must make a timely motion for abstention by the court.

2. The adversary proceeding must be 'based upon a state law claim or state law cause of action.'

3. The adversary proceeding must be 'related to' the title 11 case but it must not 'arise under' the title 11 or 'arise in' the title 11 case.

4. The adversary proceeding must be one which could not have been commenced 'in a court of the United States absent jurisdiction under this section [1334]'.

5. An action must have been commenced and is pending in a state forum of appropriate jurisdiction.

6. The pending state court action must be one that 'can be timely adjudicated' in that forum. *Id.* at 877–78 (quoting § 1334(c)(2)).

As applied to the facts presented herein, mandatory abstention is not warranted since this is a consolidated proceeding and the adversary suit brought by the Debtor-In-Possession in the Dyson matter is an action "arising in" the title 11 case and as such is not within the purview of § 1334(c)(2). By so finding, this Court is in concurrence with the majority of courts which have found the mandatory abstention provision inapplicable based upon a finding that one or more of the elements of § 1334(c)(2) is absent. *Acolyte,* 69 B.R. at 178 (citing, inter alia, *Huffman v. Perkinson (In re Harbour),* 60 B.R. 370 (W.D.Va. 1985) (mandatory abstention was not applicable because trustee's action to recover

---

6. See 1 *Collier, supra* at § 3.01 at 3–41.
 "A conflict exists in cases decided under the 1984 legislation with respect to whether an action brought on a postpetition account is a 'related' or a 'core' matter. *The better result* is that the proceeding is core; such a cause of action clearly 'arises in' the title 11 case, and was not owned by the debtor at the time the title 11 case was commenced." (Emphasis added)

7. 28 U.S.C. § 1334(c)(2) states:
 (2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. Any decision to abstain made under this subsection is not reviewable by appeal or otherwise. This subsection shall not be construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code, as such section applied to an action affecting the property of the estate in bankruptcy.

monies was a core proceeding); and *General Instrument Corp. v. Financial Business Services, Inc. (In re Finley),* 62 B.R. 361 (Bkrtcy.N.D.Ga.1986) (mandatory abstention was not warranted since the proceeding was not merely "related to" the case but "arose under" title 11 ...). Having found accordingly, the Court must now determine whether discretionary abstention under § 1334(c)(1) is appropriate.

Upon a finding of core or related proceedings this Court may abstain from hearing the matter herein pursuant to 28 U.S.C. § 1334(c)(1) which states as follows:

(c)(1) "Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State Courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."

The purpose of (c)(1) is to give the district court the discretion to abstain if abstention is in the interest of justice, or in the interest of comity with state courts or respect for state laws.[8] 1 *Collier, supra* § 3.01(3)(b).

■ This Court finds that the *Dyson* matter involving postpetition accounts receivable properly constitutes a core proceeding under § 157(b)(2)(A). In general, a finding of a core proceeding in this regard weighs in favor of a denial of abstention, *In re Franklin Computer Corp.,* 50 B.R. 620, 626; in the *Matter of Baldwin-United Corporation,* 48 B.R. at 54. However, since the present matter involves a procedural consolidation of actions to recover on both pre and postpetition accounts, this Court exercises its discretion by abstaining

from hearing the within proceedings for the reasons provided above.

---

8. Preliminary to a discussion of the application of § 1334(c)(1) is an understanding of the interaction between § 1334 and § 157:

"The bankruptcy courts are authorized by law to exercise power only with respect to those cases and proceedings that have been referred to them by the district courts pursuant to § 157(a). The district courts themselves derive their subject matter jurisdiction from 28 U.S.C. § 1334. The essential step necessary to vest jurisdiction in the bankruptcy judges is the reference of bankruptcy cases or proceedings to them by the district courts, and the

only authority for the delegation of the subject matter jurisdiction of the district courts to the bankruptcy judges is that conferred by 28 U.S.C. § 157(a)." *Acolyte,* 69 B.R. at 176 (citing Norton & Lieb, *Jurisdiction and Procedures Under the 1984 Bankruptcy Amendments,* 1985 Annual Survey of Bankruptcy Law, 53, 84).

Thus, the discretionary abstention provision under § 1334(c)(1) applies to the bankruptcy judge pursuant to the jurisdiction vested in the bankruptcy court under § 157(a).